```
             IN THE UNITED STATES DISTRICT COURT
             FOR THE MIDDLE DISTRICT OF GEORGIA
                       COLUMBUS DIVISION
```

| | |
|---|---|
| JERRY NELSON, *as personal representative of the Estate of Eddie Lee Nelson, Jr.*, and MICHELE DUSHANE*, as surviving spouse of Eddie Lee Nelson, Jr.*, | * <br> * <br> * <br> * |
| Plaintiffs, | * |
| vs. | *   CASE NO. 4:20-CV-213 (CDL) |
| SHERIFF DONNA TOMPKINS, CHIEF DEPUTY TROY CULPEPPER, COMMANDER LARRY MITCHELL, and CAPTAIN GLENDA HALL, | * <br> * <br> * |
| | * |
| Defendants. | * |

O R D E R

Plaintiffs allege that Jayvon Hatchett killed a fellow Muscogee County Jail inmate, Eddie Nelson, inside their cell. As Nelson's surviving spouse and representative of his estate, Plaintiffs bring this wrongful death action against the sheriff and three high-ranking Muscogee County Jail officials in their individual capacities. Plaintiffs assert that the four Defendants were aware that Hatchett posed a serious risk of harm to other inmates, including Nelson. Plaintiffs further allege that these four Defendants caused Hatchett and Nelson to be housed together. Plaintiffs maintain that Defendants were deliberately indifferent to a known risk of serious harm to Nelson in violation of the Fourteenth Amendment. Thus, they

bring their constitutional violation claim pursuant to 42 U.S.C. § 1983. Presently pending before the Court is Defendants' motion to dismiss, in which Defendants argue that Plaintiffs' "conclusory" and "implausible" allegations do not sufficiently state a claim to overcome Defendants' qualified immunity defense. But at this stage of the litigation, the Court must accept Plaintiffs' factual allegations as true, and when that is done, Plaintiffs have sufficiently stated a claim. Accordingly, as explained in the remainder of this Order, Defendants' motion to dismiss (ECF No. 10) is denied.

## MOTION TO DISMISS STANDARD

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims. *Id.* at 556. But "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l*

2

*Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

## FACTUAL ALLEGATIONS

Plaintiffs allege the following facts in support of their claims. The Court must accept these allegations as true for purposes of the pending motion.

Jayvon Hatchett was "a mentally unbalanced young man" who was "arrested for stabbing an AutoZone employee multiple times because of the color of his skin." Compl. ¶ 14, ECF No. 1. Hatchett "told officers at the time of his arrest that he had fantasized about killing white men." *Id.* Hatchett's statements about wanting to kill white people were disclosed in open court, picked up by local news media, and became viral on social media. *Id.* ¶ 15. Defendants—Sheriff Donna Tompkins, Chief Deputy Troy Culpepper, Commander Larry Mitchell, and Captain Glenda Hall "were aware of Hatchett's alleged hate crime and his threats to kill white people." *Id.* A judge determined that it was not safe to release Hatchett into the community, and the judge denied Hatchett bail and ordered that he undergo psychiatric evaluation. *Id.* ¶ 16. Hatchett was returned to the Muscogee County Jail, where "Defendants were fully aware of his status and the risk that he posed to white people, including other inmates." *Id.*

Eddie Nelson, Jr. was a white man who was being held in the Muscogee County Jail for violating the terms of his probation. *Id.* ¶¶ 1, 13.  Like Hatchett, Nelson was mentally ill.  *Id.* ¶ 1. Despite knowing that Hatchett "was a hate crime suspect" and that he had threatened to kill white people, "Defendants or others under their command" caused Hatchett and Nelson to be housed together.  *Id.* ¶ 17.  "Defendants and others under their command had actual knowledge of the serious risk of harm that Hatchett posed to white inmates," but "they failed to take action to protect Nelson or other white inmates from Hatchett." *Id.* ¶ 18.  "Defendants and others under their command had actual knowledge of Hatchett's mental instability," but they "failed to ensure that he was isolated from other inmates and kept under constant supervision or medical observation."  *Id.* ¶ 19.  On September 5, 2020, Hatchett bludgeoned Nelson to death in their cell.  *Id.* ¶¶ 13-14.  Plaintiffs assert that Defendants "were deliberately indifferent to the serious danger and security risk posed by a high-profile violent inmate" and that they "failed to ensure that their subordinates acted appropriately."  *Id.* ¶ 21.

Plaintiffs assert claims under two theories of liability. First, they contend that Defendants were deliberately indifferent to a known risk of serious harm to inmates in their custody.  Second, they claim that Defendants were deliberately indifferent to the serious medical needs of mentally ill inmates

4

in their custody, including both Hatchett and Nelson. All of Plaintiffs' claims are asserted against Defendants in their individual capacities only.

DISCUSSION

Plaintiffs claim that Defendants violated Nelson's rights under the Fourteenth Amendment's Due Process Clause.[1] A jail official's "deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Fourteenth Amendment." *Grochowski v. Clayton Cty.*, 961 F.3d 1311, 1318 (11th Cir. 2020) (quoting *Keith v. DeKalb Cty.*, 749 F.3d 1034, 1047 (11th Cir. 2014)). Defendants seek dismissal of all of Plaintiffs' claims. They argue that they are entitled to qualified immunity, which protects government officials acting in their discretionary authority from liability under § 1983 unless the plaintiffs establish that the officials violated clearly established federal rights. *Marsh v. Butler Cty.*, 268 F.3d 1014, 1030-31 (11th Cir. 2001) (en banc), *abrogated on other grounds by Twombly*, 550 U.S. at 563. "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal

---

[1] Plaintiffs allege that Nelson was being held in the jail on a probation violation. They assert claims under the Fourteenth Amendment, which applies to pretrial detainees. The standard for providing basic human needs to convicted prisoners and pretrial detainees is the same under the Eighth Amendment and the Fourteenth Amendment. *Keith v. DeKalb Cty., Ga.*, 749 F.3d 1034, 1045 n.35 (11th Cir. 2014).

5

before the commencement of discovery." *Id.* at 1022 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

Defendants do not dispute that it was clearly established before September 5, 2020 that jail officials have a duty to protect inmates from violence at the hands of other inmates and that officials can be held liable if they knew of a substantial risk of inmate-on-inmate violence but disregarded that risk and failed to take reasonable measures to minimize it. *E.g.*, *Grochowski*, 961 F.3d at 1318; *Marsh*, 268 F.3d at 1028. The remaining question is whether Plaintiffs adequately alleged a constitutional violation.

Again, a jail official's "deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Fourteenth Amendment." *Grochowski*, 961 F.3d at 1318. To prove such a claim, the plaintiff must establish (1) a substantial risk of harm to an inmate, (2) that the official was subjectively aware of that risk, (3) that the official did not respond reasonably to the risk, and (4) the constitutional violation caused the plaintiff's injuries. *Marsh*, 268 F.3d at 1028. Here, Defendants argue that the Complaint is filled with only conclusory allegations and that the "handful of well-pleaded factual allegations" are completely implausible. Def.'s Br. in Supp. of Mot. to Dismiss 1, ECF No. 10-1. Defendants point out that a district court considering a motion to dismiss

6

must begin its analysis "by identifying conclusory allegations that are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010). They forget, however, that the "district court should assume, on a case-by-case basis, that well pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 710.[2]

Plaintiffs allege that the four named Defendants were personally aware that Hatchett had been arrested for stabbing someone because of the color of his skin and that Hatchett had disclosed to law enforcement officers that he fantasized about killing white people. Plaintiffs further allege that because Defendants were aware of Hatchett's history and his stated intention to kill white people, Defendants knew that he posed a risk to inmates like Nelson.[3] And Plaintiffs allege that

---

[2] In support of their argument that Plaintiffs' Complaint should be dismissed for asserting merely conclusory allegations, Defendants rely in part on *Franklin v. Curry*, 738 F.3d 1246 (11th Cir. 2013). In that case, a pretrial detainee alleged that a corrections officer sexually assaulted her. She asserted § 1983 claims against several supervisory officials, but the Eleventh Circuit found that the district court erred when it failed to dismiss those claims because the detainee did not allege that the supervisory defendants "actually knew of the serious risk [the corrections officer] posed even in the most conclusory fashion." *Id.* at 1250. Here, in contrast, Plaintiffs allege that Defendants actually knew of the risk posed by Hatchett but disregarded it.

[3] Defendants argue that Plaintiffs merely allege that Defendants "knew or should have known" of a substantial risk posed by Hatchett, but that is not what the Complaint says. The Complaint alleges that Defendants knew of the risk.

7

Defendants (or others under their command) caused Hatchett and Nelson to be housed together. If Plaintiffs prove these allegations—that each Defendant was personally aware of the risk Hatchett posed to inmates like Nelson and that each Defendant personally participated in the decision to house the two inmates together—then Defendants will not be entitled to qualified immunity. Even if it struck the Court as improbable that Plaintiffs would discover evidence to support all these allegations, the Court cannot say that the allegations are implausible. Accordingly, Plaintiffs adequately allege that the four named Defendants were deliberately indifferent to a known risk of harm posed by Hatchett, and Defendants are not entitled to qualified immunity at this stage in the litigation.[4]

In addition to their Fourteenth Amendment claim based on Defendants' alleged disregard of Nelson's safety, Plaintiffs also assert that Defendants were deliberately indifferent to the serious medical needs of both Nelson and Hatchett and that Nelson was killed as a result. Defendants' motion to dismiss focuses on Plaintiffs' claim regarding the risks to Nelson's safety based on the housing assignment, but it does not squarely

---

[4] The Court recognizes that Defendants suggest that, as a factual matter, they were not personally aware of the risks posed by Hatchett or personally involved in the decision to house Hatchett with Nelson. If they present evidence in support of this argument and if Plaintiffs cannot create a genuine fact dispute, then Defendants will be entitled to summary judgment on the direct Fourteenth Amendment claim against them.

address the merits of the medical needs claim.  Because of this failure, the overlapping nature of the two claims, and the Court's determination that qualified immunity does not protect Defendants from having to defend this action, the Court declines to dismiss Plaintiffs' medical needs claim at this time.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss (ECF No. 10) is denied.  Defendants' motion to stay discovery pending a ruling on the motion to dismiss (ECF No. 11) is moot.  Plaintiffs' motion for early discovery (ECF No. 12) is denied.  The Court previously ordered the parties to confer on a scheduling and discovery order.  Plaintiffs may be able to make early document requests under Federal Rule of Civil Procedure 26(d)(2)(A), and any concerns about the preservation of documents, videos, and recordings can be addressed with a litigation hold request to Defendants.

IT IS SO ORDERED, this 22nd day of September, 2020.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA